IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TAMMY S. M.[1], | |
| Plaintiff, | |
| v. | Case No. 22-cv-01799-SPM |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423 and 42 U.S.C. §§ 1382 and 1382c, respectively[2] (Doc. 1).

## PROCEDURAL HISTORY

In December 2019[3], plaintiff applied for DIB, alleging a disability onset date of

---

[1] In keeping with the court's practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.*, and 20 C.F.R. pt 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

[3] Administrative Law Judge Jason Yoder indicated that "On December 17, 2019, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits,

December 26, 2019. (Tr. 18). On August 18, 2020, plaintiff was advised that she did not qualify for benefits and her claim was disapproved. (Tr. 107-110). On November 13, 2020, plaintiff requested reconsideration. (Tr. 112-113). On April 24, 2021, plaintiff was advised that her claim had been independently reviewed; however, the previous denial was found to be correct. (Tr. 114-118). On June 17, 2021, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") because she disagreed with the determination and claimed to be disabled. (Tr. 121-122). After holding an evidentiary hearing on September 23, 2021, the ALJ denied the application on October 20, 2021. (Tr. 15-33). Plaintiff requested review of the ALJ's decision, but the Appeals Council denied plaintiff's request for review on June 22, 2022. (Tr. 1-6). In accordance with the foregoing, the ALJ's decision is the final agency decision subject to judicial review. Plaintiff has exhausted administrative remedies and filed a timely complaint with this Court (Doc. 1).

## ISSUES RAISED BY PLAINTIFF

In her brief, plaintiff indicates that there are two primary issues to be decided:

1. Whether the ALJ violated Social Security Ruling (SSR) 96-8p by not providing a narrative discussion describing how the evidence supported the particularized manipulative findings; and,

2. Whether the ALJ violation SSR 16-3p by improperly relying on a purported lack of treatment and the receipt of unemployment benefits, while failing to assess plaintiff's daily activities and work history.

---

alleging disability beginning December 26, 2019 however, the Application for Disability Insurance Benefits was completed on January 13, 2020. (Tr. 181-187).

## APPLICABLE LEGAL STANDARDS

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he/she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ employs a "five-step sequential evaluation process." *See* 20 C.F.R. §§ 404.1520 (a)(1), (2), (4); 416.920(a)(1), (4). Accordingly, the ALJ considers the following five questions in order: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment that meets certain duration requirements or a combination of impairments that is severe and meets the duration requirements; (3) whether the claimant has an impairment that meets or equals one of the impairments listed in the regulations and satisfies the duration requirements; (4) whether, in view of the claimant's residual functional capacity ("RFC") and past relevant work, he or she can perform past relevant work; and (5) whether, in view of the claimant's RFC, age, education, and work experience, he or she can adjust to other work. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

If the claimant is doing substantial gainful activity under step 1, does not have an impairment or combination of impairments as described at step 2, can perform

past relevant work under step 4, or can adjust to other work under step 5, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i),(ii), (iv), (v); 416.920(a)(4)(i), (ii), (iv), (v). In other words, an affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled and/or a negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

  A claimant's impairments and related symptoms may cause physical and mental limitations that affect what may be done in a work setting. *See* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC at issue in steps 4 and 5 assesses the most that a claimant can do in a work setting, notwithstanding those limitations. *See* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1); *accord* SSR 96-8p, 1996 WL 374184, *2; *Clifford v. Apfel*, 227 F.3d 863, 872-73 n. 7 (7th Cir. 2000). In this way, an RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis, *i.e.*, for eight hours a day and five days a week or an equivalent work schedule. *See Tenhove v. Colvin*, 97 F. Supp. 2d 557, 568 (E.D. Wisc. 2013); SSR 96-8p, 1996 WL 374184, *2. An RFC must be based on all of the relevant medical and other evidence contained in

the record. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); SSR 96-8p, 1996 WL 374184, *2-3, 5.

The ALJ considers all impairments, including those that are not severe, and the claimant's ability to meet physical, mental, sensory, and other requirements of work. *See* 20 C.F.R. §§ 404.1545(a)(2), (4); 416.945(a)(2), (4). In terms of physical abilities, the ALJ assesses the nature and extent of any physical limitations, then determines the RFC for work activity on a regular and continuing basis. *See* 20 C.F.R. §§ 404.1545(b); 416.945(b). A limited ability to perform physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, or crouching may reduce the ability to do "other work" at step 5 of the sequential evaluation process. *See* 20 C.F.R. §§ 404.1545(b); 416.945(b); *see also* SSR 96-8p, 1996 WL 374184, *5-6.

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is

taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (emphasis added). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ, Jason Yoder, followed the five-step analytical framework described above and found that plaintiff met the insured requirements of the Social Security Act through December 31, 2024. (Tr. 20). At step one, he determined that although plaintiff worked after her alleged disability onset date, she had not engaged in substantial gainful activity ("SGA") since December 26, 2019, which was the alleged date of onset. (*Id.*). At step two, the ALJ found the plaintiff suffered from the following severe impairments: rheumatoid arthritis, degenerative disc disease, diabetes mellitus, peripheral neuropathy, incisional hernia, and obesity. (Tr. 20). The ALJ emphasized that he considered ALL of her medically determinable impairments as well as the evidence of benign hypertension, hyperlipidemia, remote histories of bilateral carpal tunnel syndrome, TIA, and possible obstructive sleep apnea and vitamin D deficiency when assessing her RFC. (Tr. 21).

At step 3, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations. (*Id.*). Before proceeding to step 4, the ALJ assessed plaintiff's RFC. In making his RFC assessment, the ALJ found plaintiff's

medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements on the intensity, persistence, and limiting effects of those symptoms were "not substantiated by objective medical evidence". (Tr. 25). The ALJ considered the other evidence in the record to determine whether the symptoms limited her ability to work. (Tr. 24). The ALJ considered her daily activities, abilities and symptoms, along with her medications. (*Id*). As such, the ALJ determined she had the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) [4], except,

> "[S]he could never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She can frequently use the bilateral upper extremities for handling, fingering/feeling, and pushing/pulling. She must avoid concentrated exposure to vibration, temperature extremes of heat and cold, and dangerous workplace hazards such as exposed moving machinery and unprotected heights." (Tr. 23).

In so concluding, the ALJ stated the initial assessment by Dr. Mikell was persuasive because it was supported by and consistent with the objective medical record. (Tr. 26). Although the ALJ did not find Dr. Feinerman's CE persuasive, he found his clinical observations and findings of thickened PIP joints as well as a rheumatoid nodule on the PIP joint of the right index finger supported the ALJ

---

[4] (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

finding of some manipulative restrictions. (*Id.*).

Following the lengthy RFC assessment, at step 4 the ALJ found that Plaintiff was capable of performing past relevant work as a cashier II because it did not require the performance of work-related activities precluded by her RFC. (Tr. 27). At step 5, the ALJ found that, based on her age, education, work experience, and RFC, plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 29).

For these reasons, the ALJ found that the plaintiff has not been under a disability from December 26, 2019, the alleged onset date, through October 20, 2021, the date of decision. (*Id.*). As such, defendant denied plaintiff's application for DIB. (Tr. 15-17).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the records is directed to the points raised by plaintiff.

### 1. Agency Forms

Plaintiff was born on March 12, 1970. (Tr. 178, 181). She alleged a disability onset date of December 26, 2019. (*Id.*). She indicated she has rheumatoid arthritis and diabetes. (Tr. 180).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the hearing on September 23, 2021. (Tr. 34-65).

Plaintiff helped her mom take care of her dad in 2018 and 2019. (Tr. 40). He had Alzheimer's and Parkinson's. (Tr. 41). She cooked and cleaned. (*Id.*). He weighed 98 pounds and she helped him out of bed, bathed him and dressed him and was on her feet most days. (*Id.*). Towards the end of 2019, she had difficulties walking and taking care of him. (Tr. 47). She is 51 years old, 5'4" and weighs about 195. (Tr. 48).

Plaintiff resides with her boyfriend. (Tr. 37). He is quadriplegic and on SS with physical and mental disabilities. (Tr. 48). She has 2 adult daughters and 4, soon to be 5, grandchildren under 7. (*Id.*). She seldom babysits unless it's absolutely necessary. (Tr. 56).

Plaintiff has her driver's license but does not drive a lot because it makes her nervous. (Tr. 49). Her boyfriend's daughter usually does the shopping and her boyfriend does most of the cooking. (Tr. 53). She has pain in her neck, shoulders, hands, feet, knees, hips, and lower back. (*Id.*). She has rheumatoid arthritis and is getting ready for a nerve conduction study, but is not receiving any treatment. (*Id.*). She takes clonidine for blood pressure, gabapentin for neuropathy in her legs and feet, and metformin for diabetes. (Tr. 50, 51).

Plaintiff cannot sit for very long and can only stand and walk for a few minutes. (Tr. 50). If she is doing chores, she has to sit down after 10-15 minutes. (Tr. 51). She can hardly write due to hand pain and can no longer do her crafting and gardening. (*Id.*). She cannot put on her makeup or do her hair because she cannot use her hands and fingers, and her knuckles hurt. (Tr. 52). She can use her cell phone for calls, but

not texting. (*Id.*). Sometimes she gets dressed, but most days she stays in pajamas all day. (Tr. 53).

A vocational expert (VE), Darrin Wright, testified based upon 5 separate hypotheticals. (Tr. 58-64). With a light exertional range and frequent use of bilateral upper extremities, plaintiff's past work would be eliminated except for cashier II position as generally and actually performed. (Tr. 61). The VE was also able to identify unskilled occupations under this scenario, including a marker, checker I, and garment sorter. (Tr. 61-62). With light work and occasional use of bilateral upper extremities, past work was eliminated and no alternate options were identified. (Tr. 62). With sedentary work and frequent use limitations, the VE identified document preparer, ink printer, and hand mounter. (*Id.*). With fourth hypothetical involving individual off task due to pain and other impairments for about 15% of the day, all positions would be eliminated. (Tr. 63). The VE opined that employers will not tolerate off-task rate of no greater than 10%. (*Id.*).

On cross examination, when the VE was asked about sedentary work with occasional use of bilateral upper extremities, he could not identify any positions within the national economy. (Tr. 64). The VE also noted that plaintiff did not have any transferable skills. (*Id.*).

### 3. Relevant Medical Records

In March 2019, plaintiff went to Community Health (Dr. Wong) and relayed history of diabetes mellitus and rheumatoid arthritis. (Tr. 319). Her pain was 6/10. (*Id.*). Pain in hands and feet – requested steroid injection. (Tr. 316). Saw Dr. Wong

again in February 2020 requesting referral to rheumatoid arthritis specialist. (Tr. 321). Discussed diabetic peripheral neuropathy. (Tr. 324).

In August 2020, plaintiff was evaluated by Dr. Adrian Feinerman. (Tr. 327-338). Plaintiff relayed history of localized neck pain x 15 years, DDD, rheumatoid arthritis, diabetes, 2016 bilateral carpal tunnel release, neuropathy, 2006 TIA. (Tr. 327-328). Plaintiff advised she could walk approximately 1 block, stand for 5 minutes and sit for 30 minutes. (Tr. 328). She could squat and bend. (*Id.*). She denied issues with fine or gross manipulation. (*Id.*). Dr. Feinerman noted "thickened synovia of the wrists and elbows … thickened PIP joints of fingers … rheumatoid nodule on the PIP joint of her right index finger … no limitation of motion of any joint … [g]rip strength is strong and equal bilaterally … no cyanosis or clubbing." (Tr. 332). He also indicated she could ambulate 50 feet without an assistive device. (*Id.*). Her muscle strength was normal (5/5) throughout and there was no spasm or atrophy. (*Id.*).

In December 2020, plaintiff sought to establish herself as patient with Katherine Laird, ACNP. (Tr. 360). She relayed a history of diabetes with neuropathy and osteoarthritis with increasing hand pain. (Tr. 361). She requested referral to rheumatoid doctor. (*Id.*). Admitted to taking ½ pill of boyfriend's Percocet due to increased hand pain. (Tr. 364). She followed-up one month later and complained of increased joint pain with feet being worse due to burning. (Tr. 367-8). Arthritic changes were noted. (Tr. 368).

In August 2021, plaintiff saw Dr. Painter at Rural Health. She complained of joint pain everywhere due to rheumatoid arthritis, but doctor noted normal

movement. (Tr. 342). History of diabetes with metformin. Takes gabapentin for increasing numbness and nerve pain in legs. (*Id.*). Positive lab tests for rheumatoid arthritis. (Tr. 357).

### 4. State Agency Consultations

In August 2020, state agency physician Dr. Frank Mikell assessed plaintiff's physical RFC based on a review of the medical records. (Tr. 84). He opined that Plaintiff was not disabled. (Tr. 87). He found that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. Dr. Mikell also noted some postural and environmental limitations due to her history of TIA in 2006. (Tr. 84-85).

In April 2021, state agency physician Dr. Maria Yapondjian-Alvarado, reconsidered plaintiff's RFC based on a review of the file materials. (Tr. 89-105). Dr. Yapondjian-Alvarado mostly agreed with Mikell's findings and concurred with his not disabled opinion. (Tr. 104). She also determined that Plaintiff could perform work at the light exertional level. (Tr. 103).

## ANALYSIS

Plaintiff first argues that the ALJ erred in his assessment in violation of SSR 96-8p. Plaintiff also asserts that the ALJ's evaluation of her symptoms was in violation of SSR 16-3p.

Plaintiff contends that the ALJ did not point to the specific evidence to support his opinion that plaintiff had manipulative restrictions. Instead, the ALJ accepted Dr. Mikell's initial assessment of a light RFC, but then found manipulative

restrictions based upon findings by Dr. Feinerman. Furthermore, the ALJ indicated that plaintiff's statements regarding her fine and gross motor movements were not substantiated by medical evidence and indicated that "the objective medical record does not show inflammation or deformity of the joints in the upper extremities", but then later specially noted the objective findings of Dr. Feinerman regarding thickened PIP joints as well as a rheumatoid nodule on the PIP joint of the right index finger. (Tr. 23, 26).

Defendant argued that there was substantial evidence to support the RFC and that the ALJ adequately discussed the medical evidence. In fact, defendant stressed that the ALJ limited plaintiff even more, not less, than initially assessed. However, this argument misses the point.

This Court is concerned with the leap the ALJ made in limiting plaintiff to even more than Dr. Mikell, albeit still at RFC light with many caveats. There is no question that Dr. Feinerman indicated objective findings. Indeed, the ALJ stated as follows (Tr. 26):

> "The ALJ is persuaded by the initial assessment provided by Dr. Mikell for the DDS. It is supported by and consistent with the objective medical record. However, the claimant has complaint of limitations in the use of her hands stemming from the rheumatoid arthritis, and Dr. Feinerman made specific clinical findings of thickened PIP joints as well as a rheumatoid nodule on the PIP joint of the right index finger. Thus the undersigned finds that the claimant also has some manipulative restrictions: she can frequent use the bilateral upper extremities for handling, fingering/feeling, and pushing/pulling."

In finding these additional restrictions, the ALJ made a medical conclusion,

which he is not qualified to do. He interpreted Dr. Feinerman's observations. How was he qualified to determine whether additional limitations were necessary and the extent of any such limitations?

This error requires remand and no further analysis. When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to the conclusion," *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir.2000), and he may not "play doctor" by using his own lay opinions to fill evidentiary gaps in the record. *See Myles v. Astrue,* 582 F.3d 672, 677 (7th Cir.2009). None of plaintiff's treating physicians nor the state-agency physicians advised that manipulation limitations were necessary. It is an ALJ's responsibility to recognize the need for further medical evaluations of a plaintiff's conditions before making RFC and disability determinations. *See Scott v. Astrue,* 647 F.3d 734, 741 (7th Cir.2011); *Barnett v. Barnhart,* 381 F.3d 664, 669 (7th Cir.2004); *Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir.2003); *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir.2000), and here the ALJ should have sought additional evaluations of plaintiff's condition before estimating the limitations she required. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court

has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED: September 25, 2022**

                                              */s/ Stephen P. McGlynn*
                                              **STEPHEN P. McGLYNN**
                                              **U.S. District Judge**